**UNITED STATES of America,**
Plaintiff,

v.

**ONE TRW, MODEL M14, 7.62 CALIBER RIFLE Serial Number 1488973 from William K. Alverson, Defendant.**

No. CIV.A. 02–455–KSF.

United States District Court,
E.D. Kentucky,
Lexington.

Nov. 26, 2003.

David Y. Olinger, Jr., U.S. Attorney's Office, EDKY, Lexington, KY, for USA, Plaintiff.

William K. Alverson, Nicholasville, KY, Pro se.

### OPINION & ORDER

FORESTER, Chief Judge.

These matters are before the Court upon Claimant's motion to stay proceedings [DE# 13] and upon Plaintiff's motion for summary judgment [DE# 15]. These matters are ripe for review.

## I. BACKGROUND INFORMATION

This is a civil action for the forfeiture of a firearm pursuant to 26 U.S.C. § 5872(a) in that the firearm in question was possessed in violation of 26 U.S.C. § 5861(d).

In October of 2001, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") received information that MK Specialties ("MK"), a Federal Firearms Licensee, in Grafton, West Virginia, sold a number of firearms marketed as the MKS M–14 firearm ("M–14"). The MKS M–14s, including the Defendant Property, were assembled by MKS from M–14 receivers that had been cut in half. The ATF obtained a listing of the purchasers of these items.

The list included claimant, William K. Alverson, ("Alverson")of Nicholasville, Kentucky. In early January of 2002, ATF special agents contacted Claimant and verified that he was in possession of the Defendant Property. On January 11, 20002, ATF special agents seized the Defendant Property from Claimant, at ATF"s Lexington Field Office. At the time of the seizure, ATF special agents provided Claimant an ATF form 3400.23 "Receipt for Property and Other Items." Subsequent to the seizure, the Defendant Property was submitted to ATF"s Firearms Technology Branch ("FTB") for analysis. ATF Firearms Enforcement Officer Richard Vasquez examined the Defendant Property and issued a Report of Technical Examination dated June 7, 2002. In that report, Officer Vasquez concluded that the Defendant Property was a machine gun within the meaning of the National Firearms Act ("NFA"), Chapter 53 of Title 26 United States Code, because it is designed to shoot automatically, and can be readily restored to shoot automatically.

ATF also conducted a search of the National Firearms Registration and Transfer Record that is maintained by the NFA branch of the ATF. The search revealed that the Defendant Property is not registered to Claimant or to any other person. It is unlawful for any person to possess a machine gun that is not registered to that person in the NFRTR. See 26 U.S.C. § 5861(d).

## II. MOTION TO STAY

■ Claimant filed a motion to stay pending the outcome in *U.S. v. Kelly*, N.D. West Virginia, 1:03CR50; and *U.S. v. One TRW, U.S. Rifle, Model 14*, D. Arizona, CIV 02–625 TUC RCC. *US v. Kelly* is a criminal action against the manufacturer of the M–14 here at issue. The Arizona *TRW* case is a civil forfeiture action involv-

ing the same type of weapon here at issue. The Claimant in this action is proceeding pro se. He alleges that it would be prudent for this Court to stay the instant action because the Defendant in *US v. Kelly,* and the claimant in the Arizona *TRW* case are represented by attorneys and the records from those cases, which would thus be fully developed, will make available information and testimony that this Claimant will be unable to produce on his own.

However, Claimant sets forth no proposition of law in support of his motion, but asserts that a stay would best meet the ends of justice and efficiency, and posits that the results of the aforementioned actions might enable the government and the present Claimant to reach an agreement out of court. This Court finds that similar cases being litigated across the country and Claimant choosing to represent himself in this matter do not create reason to stay this matter. Furthermore, this Court has granted discovery extensions and has carefully explained procedure as each step in order to accommodate the Claimant's pro se status during trial preparation.

In *U.S. v. One Harrington and Richardson Rifle, Model M–14, 7.62 Caliber Serial Number 85279,* 278 F.Supp.2d 888 (W.D.Mich.2003), the district court dealt with a similar suit involving the seizure of property identical to that involved in this action. There, the Court was presented with the same argument made by Claimant today, and found that similar pending cases were irrelevant to the issues before the court.

The results of the pending related case will have no precedential impact upon this Court. Furthermore, the facts of this case are simple, and the evidence before the Court is complete. There is only one question for this Court to decide—whether the Claimant's M–14 fits the definition of a "machine gun" under the federal statute.

If so, the gun must be forfeited to the government because it is illegal for the Claimant to have possessed it without having first registered the weapon. This is not a case in which complex scientific questions or other factual circumstances need to be meted out by a barrage of experts. In other words, the records of similar pending proceedings are not likely to be of much help to this Court. Therefore, because there is no controlling case law to the contrary, this Court will deny the Claimant's motion and proceed to rule on the Plaintiff's summary judgment motion at bar.

### III. Motion for Summary Judgment

#### A. Summary Judgment Standard

Generally, Rule 56(c) of the Federal Rules of Civil Procedure allows this Court to grant summary judgment "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." In considering the evidence submitted by the parties, the Court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court is to view all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for

the [opposing party]." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (1986)).

Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the Court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted). In most civil cases involving summary judgment, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party, who may not simply rely on the pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

### B. Applicable Law

At the heart of this matter is the definition of "machine gun" under NFA. NFA Chapter 53 of Title 26 of the United States Code defines "machine gun" as:

> Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). It is illegal under the NFA for a person to be in possession of a machine gun that is not registered to him in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d).

Property involved in a violation of the NFA is subject to seizure and forfeiture to the United States. 26 U.S.C. § 5872(a). A person may file a claim of ownership of property seized by the government for forfeiture. 19 USC § 1608. Upon the filing of such a claim, the government must initiate a civil judicial forfeiture action and meet its initial burden to demonstrate probable cause to believe that the property was used in violation of law. *Id.* at § 1615; *United States v. Any and All Radio Station Transmission Equip.,* 218 F.3d 543, 548 (6th Cir.2000).

Once the government establishes probable cause, then the burden shifts to claimant to prove, by a preponderance of the evidence, that the property was not related to the violation of federal law. 19 U.S.C. § 1615; *United States v. Certain Real Property 566 Hendrickson Blvd., Clawson, Oakland County, Mich.,* 986 F.2d 990, 995 (6th Cir.1993). If claimant offers such evidence, the government may offer "probative admissible evidence to contest the claimant's proof." *United States v. $129,727.00 U.S. Currency,* 129 F.3d 486, 492 (9th Cir.1997).

■ To establish probable cause, the government must demonstrate the existence of reasonable grounds "supported by less than prima facie proof but more than mere suspicion" for the belief that the property is subject to forfeiture. *United States v. Rural Route 1, Box 137–B,* 24 F.3d 845, 848 (6th Cir.1994). Whether there is probable cause is a question of law to be settled by the court. If the government's evidence is sufficient to establish probable cause, and there is no issue of material fact for trial, summary judgment on the probable cause is warranted. *United States v. On Leong Chinese Merchants Ass'n Bldg.,* 918 F.2d 1289, 1292 (7th Cir.

1990); *United States v. One 1987 Mercedes Benz 300E*, 820 F.Supp. 248 (E.D.Va.1993) (summary judgment granted when facts clearly showed offense occurred and that the property was involved in the offense.) Thus summary judgment ordering forfeiture is appropriate when the government establishes probable cause and the claimant fails to show that the facts constituting probable cause did not exist. *United States v. Little Al*, 712 F.2d 133 (5th Cir. 1983); *United States v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d 1093 (8th Cir.1989). In other words, once the government meets it initial probable cause showing, the Claimant must set forth facts showing that the government's classification of the M–14 as a machine gun is not entitled to deference in order to avoid summary judgment.

The authority is inconsistent on the question of whether ATF firearm classifications enjoy full *Chevron* deference. *Compare Modern Muzzleloading, Inc. v. Magaw*, 18 F.Supp.2d 29, 36 (D.D.C.1998)(explicitly applying *Chevron* deference to review of ATF classification of Knight Disc Rifle as a firearm), *with York v. Higgins*, 774 F.2d 417, 419–420 (10th Cir.1985)("an interpretive rule like the one involved in this case is not granted the 'force of law' of legislative rules."). However, the courts, as in *Harrington*, consistently recognize that when such decisions are shown to be the product of substantial agency expertise, experience and thought, they are entitled to at least the highest level of *Skidmore* respect. *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). *See also United States v. Mead Corporation*, 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and

to the persuasiveness of the agency's position ..."). Accordingly, ATF firearm classifications are usually reviewed under an "arbitrary and capricious" or similar standard.

The definition of machine gun in the NFA defines neither the term "designed to shoot" nor the term "readily restorable." However, longstanding ATF rulings provide that "designed to shoot" includes weapons that "possess specific machine gun design features which facilitate automatic fire by simple modification or elimination of existing component parts." ATF Rules. 82–2 *reprinted in* 1982–1 A.T.F. Q.B. at 18; 82–8 *reprinted in* 1982–2 A.T.F. Q.B. at 49; 83–5 *reprinted in* 1983–3 A.T.F. Q.B. at 35. These same rulings also provide that "[t]he 'readily restorable' definition defines weapons which previously could shoot automatically but will not in their present condition."

The courts have held that the "readily restorable" test is satisfied where a firearm can be made capable of renewed automatic operation, even if the restoration required the application of some degree of skill and the use of some tools or parts. *See United States v. Smith*, 477 F.2d 399, 400 (8th Cir.1973)(firearm was "readily restorable to shoot automatically" notwithstanding that "to do so would take about an 8–hour working day in a properly equipped machine shop").

The government points out that the ATF has classified the select fire M–14 as a machine gun since 1958. ATF Rev. Rul. 58–417, *reprinted in* C.B.1958–2, at 875–76. As indicated in that ruling, the M–14 is in "design and function a 'machine gun ...'" That classification was recently sustained by the United States District Court for the Western District of Michigan in relation to another M–14 receiver assembled by MK. *U.S. v. One Harrington and Richardson Rifle, Model M–14, 7.62 Cali-*

*ber, Serial No. 85279,* 278 F.Supp.2d 888 (W.D.Mich.2003). In particular, the defendant properties in both this action and in the Michigan case were assembled and sold by MK and have the same relevant design features that facilitate automatic fire by simple modification or elimination of existing parts. The Michigan Court sustained the ATF's classification of that M–14 as a machine gun, finding that the MK M–14 involved in that case was both "designed to" and "readily restorable to" shoot automatically. The court granted the Plaintiff government summary judgment in the case.

### C. Analysis

■ The case of *U.S v. One Harrington and Richardson Rifle, Model M–14, 7.62 Caliber, Serial No. 85279,* 278 F.Supp.2d 888 (W.D.Mich.2003) is directly on point. In that case, a weapon with identical traits was seized from another claimant after he was identified as a purchaser of one of the M–14's sold by MK (as was the property at issue in the instant action). While the case is not controlling, it offers valuable guidance as to what must be proved in order for the government to succeed in its summary judgment motion. That court stated:

> In the present case, the government must show that it has probable cause to believe that the property was possessed or purchased in violation of the NFA. The alleged violation is in the possession of an unregistered machine gun. Therefore, the government bears the burden in proving (1) the property qualifies as a machine gun under the NFA, and (2) the property was possessed by Claimant and was not registered to him under the NFRTR. To satisfy the first element, the government must prove that the machine gun is classified as a machine gun under the standards set forth in the NFA and that this classification was the product of reasonable analysis and was

not arbitrary, capricious, or an abuse of discretion.

*Id.* at 891.

The government has met its showing of probable cause. At the outset, several ATF field officers received information that Michael Kelly, Sr., a federal firearms licensee, was purchasing and reassembling improperly demilitarized (aka, destroyed) M–14 machine gun receivers. The ATF conducted a compliance inspection of Kelly's licensed premises and confirmed that Kelly was engaged in this activity. At that time, the ATF obtained a list of purchasers of the M–14s and contacted Claimant. The information discovered by the ATF during its initial investigation of Kelly was sufficient to provide probable cause to believe that the M–14 possessed by Claimant fit the definition of "machine gun" under the terms of the NFA. A subsequent search of the National Firearms Registration and Transfer Record revealed that the M–14 possessed by Claimant was not registered. This provided probable cause for the ATF to believe that Claimant possessed a firearm in violation of 26 U.S.C., Chapter 53.

The government's classification of the M–14 as a "machine gun," upon which the probable cause for seizure was based, has not been shown to be arbitrary. The government has presented evidence that the Property was properly classified as a machine gun under the NFA. First, the government has shown that the M–14 has been classified as a machine gun by the ATF since 1958. Further, the government has offered the testimony of FTB Report Enforcement Officer Vasquez, who filed a report based on the examination of the Property, stating that it had the features necessary to facilitate automatic fire by simple modification and therefore it satisfied both the "designed to shoot" and the

"readily restorable" criterion necessary to classify it as a machine gun under the NFA. The Claimant has set forth no evidence to the contrary. In fact, the Claimant's own expert witness estimated that the Property could be converted to fire automatically in four to six hours given the machines to make the parts:

Q: In making a conversion from semi-automatic to automatic you are aware of the report of Mr. Vasquez that he did this in 45 minutes?

A: Yes, Sir. That was in his report, yes, sir.

Q: In making that change do you have an estimate of how long it would take you to make that change if you could make that change?

A: I've thought about, you know, the equipment and stuff I would have, if I had the machines available to make the parts to what I would call OM, original manufacturer's specs. You're probably looking at a ball-park of about four to six hours.

Q: And let me ask you this question: You are familiar with this weapon in working with guns, that you could probably make that part not fully to manufacturer's specs in even less time than that, couldn't you?

A: Yes, sir. You could hand-manufacture parts. But you'd have to try to fit them until you find out if they are working or not. So I wouldn't be able to really say how much time that would take. But I would say two, three hours, maybe.

(Dep. Kraft, pp. 13–14, Exhibit E to the Plaintiff's Motion for Summary Judgment).

Thus the Claimant has set forth no set of facts under which he can purport to prove that the government's classification of the M–14 as a machine gun was arbitrary, and the United States' motion for summary judgment in this matter should be granted.

## IV. CONCLUSION

Based on the foregoing, and being otherwise fully and sufficiently advised, this Court **HEREBY ORDERS** that the Claimant's motion to stay [DE# 13] is **DENIED** and the Plaintiff's motion for summary judgment [DE # 15] is **GRANTED**. The bench trail set for this case on December 30, 2003 is **HEREBY SET ASIDE**.

### *JUDGMENT*

In accordance with the opinion and order entered contemporaneously with this judgment, the Court HEREBY ORDERS AND ADJUDGES that:

(1) Plaintiff's motion for summary judgment [DE # 15] is GRANTED;

(2) Claimant's motion to stay [DE # 13] is DENIED.

(3) this judgment is final and appealable and no just cause for delay exists; and

(4) this matter is STRICKEN from the active docket.